# **EXHIBIT B**

## **DEFINITIONS**

In addition to the definitions set forth in the Federal Rules of Civil Procedure and the Federal Rules of Bankruptcy Procedure, which are incorporated herein by reference, the following definitions apply to each request set forth herein:

1. "Action" shall mean this current proceeding.

2. "All," "each" and "any" shall be construed broadly, and shall mean each, any and all as necessary to bring within the scope of the discovery request all responses that otherwise could be construed to be outside of its scope.

3. "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

4. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

5. "Concerning" or "relating to" or "evidencing" means comprising, consisting of, concerning, referring to, reflecting, regarding, supporting, evidencing, relating to, prepared in connection with, used in preparation for, or being in any way legally, logically or factually concerned with the matter or Document described, referred to or discussed.

6. "Debtors" means Gracious Home LLC, Gracious Home Holdings LLC, Gracious Home Payroll LLC, GH East Side LLC, GH West Side LLC, GH Chelsea LLC, and Gracious (IP) LLC.

7. "Document" is used in its broadest sense and means any written, typed, printed, recorded or graphic matter of any kind, however produced or reproduced, and all non-identical copies thereof, whether different because of notes made thereon or otherwise,

including, but not limited to, and by way of example only: letters or other correspondence, messages, telegrams, telexes, memoranda, notations, reports, analyses, summaries, charts, graphs, studies, tabulations, statements, notes, notebooks, work papers, telephone records, invoices, books, pamphlets, brochures, press releases, diaries, minutes of meetings or conferences, transcripts of telephone conversations, transcripts of testimony, cost sheets, financial reports, accountants' work papers, opinions or reports of consultants, checks (front and back), check stubs, receipts, ledgers, purchase orders, pictures, photographs, contracts, agreements, advertisements, motion picture films, tapes, tape recordings, videotapes, indices, microfilm, other data compilations, including computer data and files, e-mail messages, computer diskettes or the memory units containing such data from which information can be obtained or translated into usable form, drafts of any of the foregoing, English translations or summaries of foreign language Documents and all similar Documents.

        8.     "Forbearance Agreement" means the Forbearance Agreement and Amendment to the Loan and Security Agreement, dated as of November 7, 2016, between Gracious Home LLC, as borrower, and Signature Bank, as lender.

        9.     "Including," "include" or "includes" shall mean "including, without limitation."

        10.    "Insider" means "insider" as defined by 11 U.S. Code § 101(31).

        11.    "Person" means all natural persons, corporations, partnerships or other business associations and all other legal or governmental entities or associations.

        12.    "Petition Date" means December 14, 2016.

        13.    "Producing Party" means Dorothy Mattison.

14. "Signature Bank" means Signature Bank, a national banking association, including its predecessors, successors, parents, subsidiaries, divisions or affiliates, and any of its ore their respective members, partners, officers, employees, attorneys or other agents.

15. "Signature Bank Facility" means the Loan and Security Agreement, dated as of February 10, 2015, between Gracious Home LLC, as borrower, and Signature Bank, as lender, and any amendments and supplements thereto.

16. "You" or "your" means the Producing Party responding to these requests for production of documents.

17. "WARN Act" means the Worker Adjustment and Retraining Notification Act of 1988.

## INSTRUCTIONS

1. Unless otherwise indicated in a particular request, these discovery requests seek all documents generated, received or in effect through and including December 1, 2015 to present.

2. Documents shall be produced as they have been kept in the ordinary course of business. In this respect, the file folder in which the documents are contained is deemed an integral part of the document and shall also be produced. You are specifically requested to produce any excel spreadsheets in native format.

3. The singular shall include the plural and the plural shall include the singular; the conjunctive shall include the disjunctive and the disjunctive shall include the conjunctive.

4. If any document is withheld, in whole or in part, on the basis of privilege, please provide the following information in sufficient detail to permit the Court to evaluate the

3

claim of privilege: (a) the type of document (*e.g.*, email, letter, memorandum); (b) the general subject matter of the document; (c) the date of the document; (d) the author(s), addressee(s) and recipient(s) of the document; and (e) a statement of the basis for asserting the privilege.

   5. These requests extend to all documents in a Producing Party's possession, custody and/or control, or in the possession, custody or control of persons or entities under the Producing Party's control, whether or not such documents were created or prepared by the Producing Party. The terms "possession," "custody," and "control" mean possession, custody or control, or rights to possession, custody or control, of Documents by Producing Party, including Documents in the possession of any attorneys, without limitation, and Documents in the custody, possession or control of any of the Producing Party' accountants, advisers, representatives and/or other agents of same.

   6. Each reference to a corporation, partnership, joint venture, unincorporated association, government agency or other fictitious person shall be deemed to include each and all of its subsidiaries, affiliates, predecessors and successors, and with respect to each of such entities, its officers, directors, shareholders, employees, partners, limited partners, representatives, agents, accountants, attorneys and any other person who acted or purported to act on its behalf.

   7. Each reference to a natural person shall be deemed to include that person's agents, attorneys, representatives and any other person who acted or purported to act on that person's behalf.

   8. In responding to these discovery requests, which are continuing in nature, the Producing Party shall produce all responsive documents in their possession, custody and/or control and shall promptly supplement and/or correct its responses if the Producing Party comes

4

into possession, custody or control of additional documents, or learns or determines additional information, after the service of its response.

      9.      If a Producing Party objects, in whole or in part, to responding to any request for production, the Producing Party shall set forth, in detail, the basis of such objection. Objecting to a portion of a request for production does not relieve the Producing Party of the duty to respond to those parts of the request for production to which the Producing Party does not object.

      10.      If, after a reasonable and thorough investigation using due diligence, the Producing Party is unable to furnish a document or part thereof because a document is not available to the Producing Party, the Producing Party shall provide a list of each document so lost, destroyed or otherwise unavailable, together with the following information: (a) date or origin; (b) brief description of such document; (c) author of the document; (d) date upon which the document was lost or destroyed; and (e) brief statement of the manner in which such document was lost or destroyed.

      11.      Electronic data should be produced with all native files and metadata intact, in full-text searchable format. Any responsive, electronically stored data shall be converted/processed to TIFF files and Bates numbered, and include fully searchable text. Additionally, email and native file collections should include linked native files. Documents must be produced with load files necessary to load such documents onto Summation. Images should be single-page TIFF files and file names cannot contain embedded spaces. The text and metadata of emails and the attachments, and native file document collections should be extracted and provided in a .DAT file. Searchable text of the entire document must be provided for every record, at the document level, and extracted text must be provided for documents that originated

5

in electronic format. Data should be produced as such documents and data have been maintained by the Producing Party in the normal course, preserving any and all folder and subfolder designations.

12. If there are no documents responsive to a category in this request, so state in writing.

## REQUESTS

1. Documents concerning the Debtors' defaults under the Signature Bank Facility.

2. Documents concerning Signature Bank's Notice of Events of Default and Reservation of Rights letter, dated May 10, 2016.

3. Documents concerning Debtor's advances, or requests for advances, under the Signature Bank Facility after May 10, 2016.

4. Documents concerning the draft amendment to the Signature Bank Facility sent by Signature Bank to the Debtors on or about May 26, 2016.

5. Documents concerning the Reservation of Rights letter from Signature Bank, dated June 3, 2016, including documents related to the increase of reserves to the borrowing base under the Signature Bank Facility.

6. Documents concerning the Reservation of Rights letter from Signature Bank, dated August 15, 2016, including documents related to the increase of reserves to the borrowing base under the Signature Bank Facility, including, but not limited to, the thirteen-week cash flow projections provided to Signature Bank in connection with the August 15, 2016 letter, and documents related to the same, including the preparation of those projections.

7. Documents related to the Demand for Payment and Turnover of Collateral letter from Signature Bank, dated November 1, 2016, including documents related to the acceleration of amounts due under the Signature Bank loan facility.

8. Documents concerning the Forbearance Agreement, including, but not limited to, (i) any draft agreements sent to the Debtors by Signature Bank and any budgets exchanged between the Debtors and Signature Bank thereunder; (ii) documents concerning Signature Bank's compliance with its obligations under the Forbearance Agreement; and (iii) documents concerning payments made by the Debtors under the Forbearance Agreement.

9. Documents and Communications concerning any effort or attempt to refinance the Signature Bank Facility, including, but not limited to, (i) documents concerning communications and negotiations with Siena Lending Group; and (ii) documents concerning communications and negotiations with Crossroads Financial.

10. Documents concerning inventory valuations performed by the Debtors or provided to or at the request of the Debtors.

11. Documents related to Gordon Brothers' marketing of the Debtors' inventory beginning in or about March 2016.

12. Documents concerning any reduction in rent sought by the Debtors from their landlords on their brick and mortar stores during the period January 1, 2015 through December 14, 2016.

13. Documents concerning defaults under the leases for the Debtors store locations.

14. Documents concerning the Debtors' cancellation of special orders.

7

15. Documents and Communications concerning the appointment of a chief restructuring officer.

16. All Documents concerning communications with Michael Rubin.

17. Documents concerning the marketing and sale of inventory by Gordon Brothers, including, but not limited to, documents related to the retention of Gordon Brothers.

18. Documents concerning the liquidation of the Debtors' inventory at below-market prices.

19. Documents concerning the Debtors' delay in paying or failure to pay landlords, suppliers for new inventory, employees, and/or other expenses.

20. Documents concerning the termination of the Debtors' employees.

21. Documents concerning the Debtors' decision to shut down its various business operations, including, but not limited to, (i) the Debtors' decision to shut down its Chelsea and West-Side store locations; and (ii) the Debtors' decision to shut down its website.

22. Documents concerning the Debtors' decisions whether to provide WARN Act notices to its employees, including any analyses conducted by or at the request of the relating exceptions to the WARN Act and any draft notices.

23. Documents concerning your resignation from the Board of Directors.

24. Documents concerning the resignation or termination of Michael Rubin as CRO.

25. Documents concerning the termination of services of Tracy Klestadt.

26. Documents concerning the resignation or termination of any directors or officers of the Debtors from January 1, 2015 through December 14, 2016.

8

27. All agendas and minutes of meetings of the Debtors' Board of Directors, or any committee thereof, for the period January 1, 2015 through December 14, 2016, as well as all related board materials (including board presentations).

28. Quarterly and yearly consolidated financial statements for the Debtors (both audited and unaudited) for the period 2014 through 2016.

29. Documents concerning communications with Getzler Henrich & Associates LLC, including, but not limited to, any analysis performed by or provided to or at the request of the Debtors by Getzler Henrich & Associates LLC.

30. Documents concerning communications with GlassRatner Advisory & Capital Group LLC, including, but not limited to, any analysis performed by or provided to or at the request of the Debtors by GlassRatner Advisory & Capital Group LLC.

31. Documents concerning communications with Steve Zambito or ShoreVest Capital.

32. Documents concerning your offer to place a mortgage on your house relating to the Signature Bank Facility.

33. Documents concerning your receipt of transfers from the Debtors, including, but not limited to, transfers in the form of expense reimbursements, in the one-year period prior to the Petition Date.